## Franklin Twiss v. Leander George.

*Equity jurisprudence: Specific performance: Parol contract: Performance.*
An arrangement between a step-son just come of age and about to leave
home and set up for himself, and his step-father, that if the former
would stay with the latter and work the farm and take care of the
family, he should have in consideration thereof a deed of one-half the
farm, which is shown by the evidence to have been a distinct and defi-
nite agreement as to the land and the consideration, and not a mere
vague expectation, is sustained and specifically enforced after a substan-
tial performance of the consideration.

*Evidence: Representatives of deceased person: Matters equally within knowl-
edge of deceased.* The statute which in controversies with the represent-
atives of deceased persons precludes evidence of matters equally within
the knowledge of the deceased, does not apply to controversies with
third persons acting in their own right as purchasers during the life of
the deceased, and not taking by any *post mortem* estate.

*Equity pleading and practice: Suit at law: Election: Bar.* The fact that
complainant, after conveyance of the land to a third person, brought
attachment and levied on the land for such of his advances and expend-
itures as were not outlawed, where the attachment has since abated by
the death of the defendant therein, will not avail as a bar to his bill,
filed to set aside such conveyance on the ground that the grantee therein
took as trustee subject to complainant's beneficial interest, at least not
where such defense is not clearly and directly set up in the answer.

*Submitted on briefs January 6.  Decided January 11.*

Appeal in Chancery from Branch Circuit.

*John B. Shipman,* for complainant.

*Upson & Thompson,* for defendant.

CAMPBELL, J:

This is a bill filed to set aside a conveyance made by
one Jasper Underhill to defendant, of lands in Branch county,
which complainant alleges belong in equity to him and should
be conveyed to him under an agreement made by said
Underhill.

Complainant was the step-son of Underhill and came to
Michigan with his mother and step-father during his minority,
living on a farm of eighty acres, of which the forty acres
in question formed a part.

The transaction relied upon is claimed to have been as follows: In 1841, a few months after complainant came of age, he was making preparations to go away and set up work for himself. Underhill was opposed to this, and wanted complainant to stay with him and work the farm and take care of the family. After some discussion, complainant accepted his offer that if complainant would do so he would deed him half of his farm, being the forty acres in question, reserving the remainder for his son; that complainant has ever since retained control and management of the farm, improved it, paid taxes on it, and built a house upon it worth several hundred dollars; that Underhill and wife lived with complainant before and after his marriage, until Mrs. Underhill died in 1870, except during some not very long intervals; that after her death, and at the close of 1871, Underhill went to live with defendant, who was his son-in-law, and stayed there till his death in the spring of 1873; that in December, 1872, defendant procured, by importunity and undue influence, from Underhill, a conveyance of the property, and in January, 1873, began an ejectment suit, on which he recovered judgment against complainant, who has obtained a new trial under the statute.

Defendant denies the contract, insists on its invalidity if made, and claims to be a purchaser in good faith.

If the testimony in this case can be acted upon, we think the complainant has made out the contract in substance as alleged. If we believe his story, and it has impressed us as reliable, and corroborated by circumstances, the agreement was distinct and certain as to the land and the consideration, and the case shows, not a vague expectation of benefit, but a distinct and positive promise. Neither is it a promise to make a gift. It was an arrangement which contemplated beyond question such family conduct as would benefit both parties; but it involved an expectation of more benefit to Underhill and wife than to complainant, and it required him to give up plans for independence, which no young man would be likely to resign without strong motives and family attachment. And the fact that he remained in this mode

of life, after as well as before his marriage, for more than thirty years, is one of the strongest corroborating proofs that could be given that his story is true. It would be an unaccountable thing otherwise that a man of at least some degree of sense and business activity should spend such an existence. The counter testimony has not convinced us either that complainant's story is doubtful, or that defendant is an honest purchaser. And had he purchased in ignorance, which we think he did not, the complainant's position called on him to inquire, and if he had done so fairly and promptly he could not have been misled.

It is claimed, however, that the testimony of complainant involves statements of matters which were in the knowledge of Underhill equally with himself, and are precluded by the statutory rule applicable in cases of legal controversies with the representatives of deceased persons.

There is some other evidence, but none so full or satisfactory, and this question becomes material. But we do not think we are authorized to interpolate into the statute any such prohibition in controversies with third persons acting in their own right as purchasers during the life of the deceased, and not taking by any *post mortem* estate. Defendant not only purchased, but began his ejectment during Underhill's life.

Upon the theory of the bill, which charges that the property was obtained by undue influence over an old and feeble man, complainant would come more nearly into the position of Underhill's representative than defendant, who is charged to have wronged him out of what was a trust estate. But we do not deem it important to consider to what extent these suspicions should prevail.

It is also claimed that complainant has barred himself from the relief sought, because when Underhill conveyed to defendant, complainant brought suit in attachment and levied on the land to collect such of his advances and expenditures as were not barred by the statute of limitations. Without considering what weight would have belonged to such a pro-

ceeding had Underhill lived and been a party to this action and had the attachment suit been kept on foot, it is enough to say that defendant was a stranger to that proceeding, and took the land in question as a trustee subject to complainant's beneficial interest, and that he has not set up the attachment as a defense, or made any averments bringing him into privity with it. The reference to attachment proceedings in the answer is casual and not direct, and shows no purpose to rely on them as a bar. They are not described or identified, and the idea of setting them up now is outside of the issues, and probably an after-thought.

We think the decree below was correct, and it must be affirmed, with costs.

The other Justices concurred.