FRIEND v. SMITH.

1. SPECIFIC PERFORMANCE — VENDOR AND PURCHASER — PART PER-
   FORMANCE.
   A contract fully performed on the one side, to convey to
   a daughter and her husband defendant's homestead in
   consideration that the former would give up their farm,
   move to the home in the village and occupy it with de-
   fendant, and make some improvements named, the deed
   to be executed when the improvements were completed,
   is enforceable against the grantor though it was not in
   writing.

2. SAME—EQUITY.
   It is not a matter of course to decree specific perform-
   ance; a sound discretion is exercised, and the same must
   not be arbitrary and capricious, but regulated on judicial
   grounds; where the terms are certain and definite, the
   acts of the parties and performance on the one side take it
   out of the statute.

Appeal from St. Joseph; Knowlen, J. Submitted
January 10, 1916. (Docket No. 82.) Decided March
31, 1916.

Bill by Fred L. Friend and another against Charles
E. Smith, impleaded with others, for a decree setting
aside certain deeds and for other relief. From a de-
cree for complainants, defendant Smith appeals. Af-
firmed.

*Harry. C. Howard* and *Theo. T. Jacobs,* for com-
plainants.

*Edward J. Anderson,* for defendant.

STONE, C. J. In this cause the bill of complaint was
filed in July, 1912, to set aside, as fraudulent, a deed

of certain premises executed by the defendant Alma E. Smith to the defendant Cora Cromer, bearing date May 28, 1912, and also of a deed of the same date executed by said Cora Cromer to the defendants Alma E. Smith and her husband, the defendant Charles E. Smith, and for specific performance of a prior executed oral agreement made by said Alma E. Smith (then Tisdell) and the complainants, to convey said premises to Gertie Friend, one of the complainants.

The premises in litigation consist of a house, barn, and buildings with the land appurtenant thereto, situate in the village of Burr Oak in the county of St. Joseph, of the value of from $1,500 to $2,000. Mrs. Smith died after answer and before the hearing, and upon proper suggestion, the suit proceeded against Edward Hackman, the administrator of her estate. Mrs. Smith was the mother of complainant Gertie Friend, who was an only child by a former husband. Mrs. Smith had been previously married to one Irwin Tisdell, who died in May, 1911, whereupon she became the owner of the premises in question.

At that time the complainants lived upon and owned a farm in the township of Burr Oak, about one mile from the village; and immediately after the death of Mr. Tisdell his widow, then Alma E. Tisdell, went to live with them, closing her house in the village.

It is the claim of complainants that they were well and happily situated upon the farm, enjoying a pleasant home there with their children around them, and did not want to make any change; that when Mrs. Tisdell first came to live with them there was no definite arrangement as to the terms or length of her stay with them; that very soon she became dissatisfied, and longed to go back to her home in the village, and requested and urged complainants to give up their farm life and move with their family to the village, and occupy her home with her, stating that if they

would do so, and would support her and make and keep up certain improvements upon the place, she would forthwith, after the improvements were made, make, execute, and deliver a deed of said village property to complainant Gertie Friend, her daughter.

It is the further claim of complainants that at considerable sacrifice they finally accepted such offer, and, desiring to do all they could to make the said Alma E. Smith, then Alma E. Tisdell, happy and contented, and believing that the said Alma E. would do as she agreed, and give complainants a deed of said village premises, they found a tenant for their farm and made a lease of the same for a long time, and commenced to make the repairs and improvements requested by the said Alma E. Tisdell, and after the repairs and improvements were about finished, complainants gave up their farm at considerable pecuniary sacrifice and moved, on or about September 11, 1911, to the home of Mrs. Tisdell in the village, and have continued to so occupy said home ever since, and have made all the repairs requested by her, and to her entire satisfaction, and have done all in their power to make Mrs. Tisdell happy and contented and to give her a home with them. The improvements which complainants claim they agreed to make, and did make, consisted in papering the rooms in the dwelling house and electric lighting the same, furnishing chandeliers and fixtures, putting a cement floor in the barn, the building of a corncrib, building and repairing fence, etc., at an expense of about $200.

Matters seem to have gone along pleasantly, the parties living together harmoniously at the village home until the last of May, 1912, when, after living with complainants about one year, Mrs. Tisdell, suddenly—at least to complainants—married the defendant Charles E. Smith. The marriage took place on May 27, 1912. Smith was a widower, an acquaintance of the family, and had been a visitor at the home of

complainants. For some reason the fact of this marriage was kept from complainants for some days. The next day after the marriage, to wit, on May 28, 1912, a voluntary deed was made by Mrs. Smith to the defendant Cora Cromer, who on the same day conveyed the property in question to Mr. and Mrs. Smith as husband and wife. It was conceded upon the hearing that there was no money or property consideration for these conveyances, the purpose being to create a tenancy by the entireties in Mr. and Mrs. Smith.

Soon after the marriage became known to complainants, Mrs. Smith left the home and went with her husband, demanded possession of the premises, and, upon refusal of possession, commenced summary proceedings to recover the same, whereupon this bill of complaint was filed. The joint answer of the defendants Mr. and Mrs. Smith admits the residence of Mrs. Smith with complainants, but claims that the same was a temporary arrangement, to be terminated at her pleasure. It denies that any agreement to deed the premises to complainant Gertie was ever made; admits that complainants made some improvements voluntarily, as they saw fit, but alleges that such improvements did not exceed $125 in value.

The answer further claims that complainants treated the mother unkindly and cruelly, because she would not make them a present of a $1,500 mortgage which she owned.

It may be stated that Mr. Tisdell was a second husband, was not the father of complainant Gertie, and the property in question came to Mrs. Tisdell from Mr. Tisdell, and not from the father of Gertie.

Mrs. Cromer filed a disclaimer in the case, and no evidence was offered on the part of appellant Smith relating to the alleged agreement to deed the premises to complainant Gertie Friend. The testimony was heard by the trial judge in open court, and the main

testimony relating to the claimed agreement was that of the daughters of complainants, and a Mrs. Sauer, a friend of the family, who was a visitor there at the time it is claimed the agreement was made.

Mrs. Smith died December 3, 1913. At that time the relations between Mr. Smith and complainants were such that he did not notify them of her death, and they did not attend the funeral, the testimony showing that Mr. Smith had said he would not permit them to do so. Mr. Smith has married again.

The circuit judge filed an opinion in writing in which he said:

(1) "I find the terms of the alleged oral contract as claimed and pleaded by complainants to be clearly made out by the testimony of the two daughters of complainants, and by the testimony of Mrs. Sauer. * * *"

(2) "I find the attendant circumstances such as to sustain the alleged oral contract, as a material one, and one likely to have been made."

"Mrs. Friend was Mrs. Smith's only child. Mrs. Friend's two young woman daughters were Mrs. Smith's only grandchildren. Mutual kindness, regard and affection had been the continued relations between the parties, unbroken until Mrs. Smith (then Mrs. Tisdell) married Mr. Smith."

(3) "There is no evidence in the case tending to show that in any respect complainants failed in their contract duty toward Mrs. Smith in point of material provision or that they withheld from her in any degree, the full measure of consideration and affection which had characterized the relation for so many years; nor is there any evidence tending to show that Mrs. Smith ever complained of any such failure in any of these respects, or that she was in any wise dissatisfied, until her attachment for and marriage with Mr. Smith."

(4) "Although under the contract, complainants were bound to make Mrs. Smith a member of the family in the Burr Oak home during her life, performance by them in this respect was not made a condition

precedent to the conveyance to them by her. of the premises in suit. Upon the contrary, such conveyance was due when the improvements were completed or under headway. The record clearly shows full performance by complainants in this respect. If the contract had provided for conveyance at Mrs. Smith's death, a different question would present itself."

(5) "If the contract had been made in the same terms but between Mrs. Smith and a stranger or one not occupying the relation of only daughter, the resulting differing, natural equities might be a subject of consideration by the court in reaching an equitable conclusion."

(6) "Here, Mrs. Friend was Mrs. Smith's nearest and dearest relative, her own flesh and blood, the natural object of her bounty. Mrs. Friend may scarcely be recompensed in damages for breach of contract. Her home and her husband's business were reluctantly given up and the course of her life was materially changed by the arrangement."

(7) "Mrs. Smith, then Mrs. Tisdell, married Mr. Smith in May, 1912. Shortly after this marriage, Mrs. Smith, who owned the property in question in fee, caused the title to be vested in herself and Mr. Smith in entirety. The value of the property is shown to be about $2,000. This conveyance in entirety appears to have been a purely voluntary one. No consideration apparently passed. Mr. Smith does not claim to be a *bona fide* purchaser for value. Mrs. Smith died in December, 1913. Mr. Smith married again in about eight months after her death."

(8) "The complainants are entitled to prevail and to the relief prayed in the bill. This finding is, in my opinion, entirely sustained by the record in the case and is, in my opinion, in entire harmony with the natural equities disclosed by the evidence."

The defendant Charles E. Smith has appealed.

We have read the entire testimony with care, and it clearly appears that immediately after Mr. Tisdell's death Mrs. Tisdell went to live with complainants upon their farm; that for a time she was contented and satisfied, but after she had been there a short time she desired to go back to her home, and requested and

begged complainants to give up their farm life and move their family to her home in the village, and occupy said home with her, stating at that time to complainants that if they would do so, and would provide a home for her, and would make certain improvements on the place, she would, as soon as the improvements were made, or commenced, execute and deliver a deed of the premises to the complainant Gertie Friend.

The evidence is undisputed that while the improvements were being made, Mrs. Tisdell on one occasion took a box containing her papers and went out, stating that she was going to have the deed executed, that upon her return to the house she stated that she had executed such a deed to her daughter, and that everything was settled. We think the claim of complainants that here was a definite agreement, executed by the complainants, to deed the premises at a specified time, and not on some indefinite future occasion, is correct.

In *McMurtrie* v. *Bennette*, Har. Ch. (Mich.) 124, it was held that it is not a matter of course to decree specific performance of contracts. It requires a sound discretion, upon a view of all the circumstances; and this discretion must not be arbitrary and capricious, but must be regulated upon grounds that will make it judicial. Here the contract appears to be certain and definite, and has been performed by complainants.

It is urged by appellant that specific performance would be inequitable, harsh, and oppressive. We have examined the cases cited. We are of the opinion that the conclusion reached by the trial judge was supported by the evidence, and that the case is, upon the facts, taken out of the statute of frauds. That contracts of this kind have been frequently enforced by this court appears by the following cases: *Twiss* v. *George*, 33 Mich. 253; *Lamb* v. *Hinman*, 46 Mich. 112 (6 N. W. 675, 8 N. W. 709); *Fairfield* v. *Barbour*, 51 Mich. 57 (16 N. W. 230); *Welch* v. *Whelpley*, 62 Mich. 15 (28

N. W. 744, 4 Am. St. Rep. 810) ; *Taft* v. *Taft,* 73 Mich. 502 (41 N. W. 481) ; *Putnam* v. *Tinkler,* 83 Mich. 628 (47 N. W. 687) ; *Russell* v. *Russell,* 94 Mich. 122 (53 N. W. 920) ; *In re Williams' Estate,* 106 Mich. 490-502 (64 N. W. 490) ; *Briggs* v. *Briggs,* 113 Mich. 371 (71 N. W. 632) ; *Pike* v. *Pike,* 121 Mich. 170 (80 N. W. 5, 80 Am. St. Rep. 488) ; *Ruch* v. *Ruch,* 159 Mich. 231 (124 N. W. 52) ; *Brown* v. *Brown,* 163 Mich. 337 (128 N. W. 195) ; *Howe* v. *Benedict,* 176 Mich. 522 (142 N. W. 768) ; *Hogan* v. *Hogan,* 187 Mich. 278 (153 N. W. 678).

The decree of the court below is affirmed, with costs of this court to complainants against appellant.

KUHN, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.